WEIST v TOLEDO NEWPAPER CO et

Ohio Appeals, 6th Dist, Lucas Co
No 2339. Decided May 26, 1930

Fraser, Hiett, Wall & Effler, Garrison &
Phillips and Smith, Beckwith, Ohlinger &
Froelich, all of Toledo, for Weist.

Tracy, Chapman & Wells, Toledo, for Toledo Newspaper Co, et.

WILLIAMS, J.

The law is that if two or more persons conspire together to ruin the reputation and good name of an innocent party and in furtherance of the common purpose falsely

accuse him of the crime of murder and cause him to be falsely arrested and maliciously prosecuted, slandered and libeled therefor to that end and thus damage his reputation, a recovery may be had for the damage so caused. **Zurhorst vs. Kroll, 10 C. C., N. S., 228.** To hold that there could be no recovery for the damages caused by the execution of so fiendish and diabolical a plot would be to bring contempt upon the administration of justice. The only trouble with the case made by the evidence adduced by plaintiff is that there is no evidence tending to show such a conspiracy.

It is interesting in this connection to refer to the clues and information which pointed to the guilt of Weist at the time he was taken to the police station on March 10th. He was the first to find the body of his half-sister. It was known that he maintained a printing shop in which he lived and had sleeping quarters, and that he was accustomed to bring women there at night, and by his own admission, when questioned about it, he was "no angel". He had been divorced by two wives. He made conflicting statements to the police about finding the pocketbook and locket of the murdered girl.

A person, whose name is not disclosed in the record, had told Detectives Timiney and Carroll, who had been investigating the case, and Assistant Prosecuting Attorney Cochrane who was supervising the investigation, that he positively identified Weist as a man that he had seen hanging around the University on the evening of the murder about the time Lily Croy would leave her classes, describing him, even to the black spots on his teeth on one side of his mouth. This person stated that a girl came out of the University Building and walked down to the corner of Washington Street, turned left and started out Washington Street toward Palmwood, which would be in the direction of the Washington School and Lily Croy's home, and that Weist followed her and that he, the informant, followed both Weist and the girl for a block or so and then he thought that Weist was "trying to pick the girl up" and he left. The Assistant Prosecuting Attorney even went out with the person who gave this information and went over the ground with him.

The investigators also had information that Weist was indebted to Lily Croy and that Fred Schade, his employee, had stated that he unsuccessfully searched the living quarters in Weist's printing establishment soon after the murder, looking for blood, because he suspected that Lily Croy might have been killed there, and he desired to secure a portion of the reward offered. This information in the hands of the police and prosecuting attorney was sufficient to warrant the apprehension and questioning of Weist, and also a Grand Jury investigation.

In June, 1928, Stanley Hoppe was tried and found guilty of the brutal and sensual murder of a little girl. He was sentenced to death and has been electrocuted. During his trial he confessed to killing Lily Croy and his deposition is on file in this case. The fact that he claimed to have killed Lily Croy was not known, however, until long after the happening of the things of which the plaintiff complains.

An examination of the articles published in the News-Bee fails to disclose that anything was published not warranted by the information at hand, under the undisputed evidence.

As there is no evidence in the record tending to show an actionable conspiracy, the court below did not err in directing a verdict for the defendant, and the judgment will therefore be affirmed.

Lloyd and Richards, JJ, concur.